58 CCPA

**Application of Sabatino R. ORFEO and Kevin P. Murphy.**

**Patent Appeal No. 8468.**

United States Court of Customs and Patent Appeals.

April 29, 1971.

Jay P. Friedenson, Morristown, N. J., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 5–8 of appellants' application, entitled "Fluorocarbon Compositions,"[1] as unpatentable under the

---

1. Serial No. 397,407 filed September 18, 1964.

provisions of 35 U.S.C. § 103. No claims have been allowed.

The invention relates to a low temperature refrigeration process utilizing an azeotropic mixture of trifluoromethane ($CHF_3$; boiling point of $-82.0°$ C.) and monochlorotrifluoromethane ($CClF_3$; boiling point of $-81.4°$ C.). The $CHF_3/CClF_3$ azeotrope, consisting of 49—51 mole % $CHF_3$, exhibits a boiling point of about $-87.9°$ C. at 14.65 psia. Appellants disclose that mixtures of $CHF_3$ and $CClF_3$ substantially in the range of about 20% to about 75% $CHF_3$ have boiling points within about 1° C. of the azeotropic boiling point and exhibit only negligible fractionation on boiling under refrigeration conditions.

Claim 5 is representative:

5. The process of producing refrigeration which comprises condensing a mixture consisting of trifluoromethane and monochlorotrifluoromethane, in which mixture the mole % of trifluoromethane is in the range of about 20—75, and thereafter evaporating said mixture in the vicinity of a body to be cooled.

Claims 6–8 recite successively narrower ranges of proportions of $CHF_3$ and $CClF_3$. That is, claim 6 recites a mixture in which the mole % of $CHF_3$ is in the range of about 36–64, claim 7 calls for 42–55% $CHF_3$, and claim 8 recites the azeotropic proportions of 49–51% $CHF_3$.

The references relied upon are:

Midgley et al.
(Midgley)      1,968,050     July 31, 1934
Thomson-Houston
(Great Britain)    668,609    March 19, 1952
Fiske, "Low Temperature Freon Refrigerants," Refrigeration Engineering, April 1949, pages 336, 338–339.

Thomson-Houston discloses a method of preparing fluorochlorohydrocarbons. The reaction products of the process are distilled through a low temperature distillation column to give a number of fluorocarbons and fluorochlorocarbons. Among the identified compounds recovered from the distillation column is a mixture of $CClF_3$ $CHF_3$, and listed in Tables I and II as having a boiling point of $-88°$ C. at a pressure of approximately 762mm (14.73 psi.) and listed in Table III as having a boiling point of $-90°$ to $-86°$ C. (758 mm.; 14.66 psi.). It is disclosed that the process is "eminently suitable for making easily and economically fluorochloro compounds which find utility as refrigerants, for example, $CF_2Cl_2$ and $CHF_2Cl$." It is further disclosed that "the process permits the preparation more easily of fluorochlorocarbon compounds which have desirable temperature ranges and which make them suitable for low temperature refrigerations."

Midgley discloses using $CHF_3$ and $CClF_3$ individually as refrigerants in a low temperature refrigeration process which includes evaporating the desired compound in the vicinity of the body to be cooled.

■ Although the examiner cited, and the board apparently relied on, the Fiske article, it was not included in the record before us. Therefore, we must assume that Fiske discloses the features for which it was cited. In re Kaufmann, 193 F.2d 331, 39 CCPA 769 (1951). According to the board, Fiske was cited as "demonstrating knowledge in the art of the employment of fluorocarbon components in low temperature refrigeration processes."

The examiner rejected all the claims under 35 U.S.C. § 103 as unpatentable over Thomson-Houston in view of Midgley. Fiske was cited by the examiner to show the state of the art. The board affirmed, stating:

The employment of a mixture of known refrigerants in a conventional process of refrigeration (exemplified in Midgley et al. and Fiske) is clearly obvious to one having ordinary skill in the refrigeration art.

Appellants in effect admit that the above-quoted statement of the board is correct. That is, they admit that the claimed invention is prima facie obvious

in view of the references cited. Appellants state in their brief:

> Appellants further admit that one skilled in the art would have expected that mixtures of $CHF_3$ and $CClF_3$ would have been useful in producing refrigeration.

Despite this concession, appellants strenuously urge that the prima facie case made out by the Patent Office has been rebutted by the Atwood affidavit. The Atwood affidavit was submitted in accordance with Rule 132 to show that the use of the $CHF_3/CClF_3$ mixture in a low temperature refrigeration process produces a new, unexpected, and unobvious result in power requirement.

In response to appellants' arguments concerning new and unexpected results, the board stated:

> The argued additional advantage to which the Atwood affidavit is directed, lower power requirement as compared with that for either component of the mixture alone, does not represent any unexpected process coaction and does not render unobvious appellants' process which clearly follows the specified suggestions in the art.

It is the solicitor's contention, as set forth both in the brief and at oral argument, that the new and unexpected results evidenced by the Atwood affidavit cannot be considered or, if considered, cannot be deemed persuasive since the claimed invention is either anticipated by Thomson-Houston or "ultimately obvious" in view of the references cited.

First, we wish to point out that no matter how hard the solicitor tries to find one, there is not and never was a rejection of the claims in this case under 35 U.S.C. § 102 as anticipated by Thomson-Houston. Therefore, we think that the evidence of new and unexpected results as set forth in the Atwood Rule 132 affidavit must be considered. As long as there is a question of obviousness, no matter how trivial that question may seem, we think appellants have the right to have considered the Rule 132 affidavit which allegedly shows new and unexpected results. If that affidavit is strong enough in its showing of new and unexpected results, the Patent Office's position that the claimed invention is obvious may be found to be rebutted. We find that to be the situation here.

After taking the Atwood affidavit and appellants' arguments concerning it into consideration, we are convinced that the claimed invention achieves new and unexpected results to the extent that appellants' invention as a whole would not have been obvious to one of ordinary skill in the art. The Atwood affidavit shows that the $CHF_3/CClF_3$ azeotrope, contrary to all expectation, exhibits a power requirement lower than the power requirements of the $CHF_3$ or $CClF_3$ components of the mixture.

According to the Atwood affidavit, for any specific BTU pumping capacity the power need increases as the difference between the evaporating and condensing temperatures increases. Because this temperature "lift" for low temperature systems is large, it follows that the corresponding power requirement is also large. Therefore, the power requirement has become a significant consideration in the trade. This is also indicated by two articles of Pennington[2] which were made a part of the Atwood affidavit.

In the affidavit, Atwood sets forth his calculations of the power requirement for all known azeotropes. These calculations were made in two ways. One method involved using actual or observed thermodynamic data. The other method of determining the power requirements involved using the mathematical relationship developed by Pennington, referred to as "Pennington's Law" and based on the principle that the product of the latent heat efficiency and the pow-

---

2. Pennington, "Progress in Refrigerants—1," World Refrigeration, Feb. 1957, pages 85–91; Pennington, "Progress in Refrigerants—2," World Refrigeration, March 1957.

er requirement (conventionally measured in horsepower (HP) per ton) is constant for all refrigerants over a given temperature cycle. In all cases except for the claimed $CHF_3/CC1F_3$ mixtures, the power requirement of the azeotrope was higher than ·at least one of the components of the mixture. On the other hand, the $CHF_3/CC1F_3$ azeotrope had an actual power requirement of 1.59 (HP per ton) compared to 1.65 for $CHF_3$ and 1.63 for $CC1F_3$. It is stated in the affidavit that this result is directly contrary to Pennington's Law, which would predict a power requirement of 1.72 (HP per ton). Finally, the affidavit shows that the power requirement of refrigerants increases as higher pressure refrigerants are employed on the same cycle; however, the $CHF_3/CC1F_3$ azeotrope exhibits a higher pressure than either of its components and yet it suffers no penalty over either component with respect to power requirement.

In view of this evidence, we conclude that using the $CHF_3/CC1F_3$ azeotrope in a low temperature refrigeration process results in new and unexpected savings in regard to the power requirement. The Patent Office as much as admits that the results shown in the Atwood affidavit are new and unexpected. For example, the examiner stated that "applicants may have shown that they, by using the claimed mixture, have achieved results which are unobvious or not readily apparent to one having ordinary skill in the art"; however, the examiner remained unconvinced of patentability.

The only attempt by the Patent Office to deny that new and unexpected results are achieved by appellants' invention comes from the board's statement that it would be expected that the azeotrope of Thomson-Houston would be a better refrigerant in view of the fact that its boiling point is lower than that of either of its components. The board evidently is implying that one of ordinary skill in the art would expect the azeotrope with the lower boiling point to have a lower power requirement. From our review of this case, we can find no indication that

the lower boiling point is directly responsible for the lower power requirement, and, to the contrary, it appears that there are numerous factors (some of them not fully comprehended) which lead to the unexpectedly low power requirement of the azeotrope.

We think that this is one of those cases where even though the claimed invention involves the use of a known compound in a known process it is still unobvious to one of ordinary skill in the art because of the new and unexpected results and effects achieved. In re Zierden, 411 F.2d 1325, 56 CCPA 1223 (1969); In re Lemin, 326 F.2d 437, 51 CCPA 942 (1964). Therefore, the decision of the board is reversed.

Reversed.