**Application of Frank A. MALAGARI, Jr. Patent Appeal No. 9204.**

United States Court of Customs and Patent Appeals.

July 25, 1974.

Rehearing Denied Sept. 12, 1974.

---

Robert F. Dropkin and Vincent G. Gioia, Pittsburgh, Pa., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents.

Henry W. Tarring, II, Falls Church, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 14–21 of application serial No. 785,873, filed December 23, 1968, entitled "Method of Producing Grain Oriented Silicon Steel." We affirm.

*The Invention*

Appellant claims a process for producing grain oriented silicon steel from a starting material "containing between 0.03 and 0.07% carbon." To this allegedly critical range appellant attributes unexpected results in that the resulting steel has a higher electrical permeability and a lower core loss. Claim 14 is representative:

14. A process for producing grain oriented silicon steel containing not more than about 0.005% carbon, comprising the following steps:

(a) heating steel containing between 0.03 and 0.07% carbon and between 2 and 4% silicon at a temperature in excess of 2350° F;

(b) hot rolling said steel;

(c) heat treating said steel at a temperature in excess of 1600° F for at least about 30 seconds;

(d) cooling said steel without quenching;

(e) cold rolling said steel;

(f) normalizing said steel;

(g) cold rolling said normalized steel;

(h) normalizing said steel;

(i) decarbonizing said steel to a carbon level not greater than about 0.005% carbon; and

(j) final annealing said steel at a temperature in excess of 1600·° F.

Dependent claims 15, 16, and 17 further specify the use of a decarburizing atmosphere which, in claim 16, is specified as a mixture of nitrogen and hydrogen. Dependent claims 18 and 19 further restrict the temperature utilized in the heat treating and final annealing steps. Claim 20 specifically defines the parameters of the final annealing step of claim 14. Claim 21, dependent upon claim 14, specifies that the steel contains at least about 0.10% manganese.

### The References and Rejections

The references are:

| | | | |
|---|---|---|---|
| Crede et al. (Crede) | 2,867,557 | Jan. 6, 1959 |
| Henke | 3,021,237 | Feb. 13, 1962 |
| Mobius | 3,207,639 | Sept. 21, 1965 |
| Goss | 3,239,332 | Mar. 8, 1966 |

As noted by the board, appellant "conceded that, except for the range of carbon specified in step (a) of claim 14, the process defined by the claims is precisely disclosed in the references as applied by the Examiner and was employed in the industry prior to the filing date of the involved application." Goss relates to silicon steels similar to appellant's in all respect except for the specified initial carbon content. Goss discloses that "A typical preferred range and a typical specific analysis for such a steel is as given in the following table." The table lists, for the "Ingot Used," a "Specific" weight percent of carbon of .025 and an "Average Range" of carbon as .020–.030.

Crede, in a similar format, contains a table giving "typical preferred range" and "typical specific analysis" for his silicon steel, which is produced according to a process closely analogous to that of appellant. The "Typical" percent by weight of carbon is .028 and the "General range" is .020–.035.

Claims 14, 15, 17–19, and 21 were rejected by the examiner as anticipated by Goss under 35 U.S.C. § 102 and as obvious over Goss alone or in view of Crede under § 103. Claim 16 was rejected under § 103 for obviousness in view of Goss alone or Goss in view of Crede, taken further in view of Henke; and claim 20 under § 103 on Goss alone or in view of Crede, taken further in view of Mobius.

Appellant does not appear to challenge the application of Henke and Mobius as applied to show various features of dependent claims 16 and 20, but relies upon the alleged shortcomings of Goss and Crede as applied against all of the claims. Thus these claims stand or fall with claims 14, 15, 17–19, and 21.

### The Board's Opinion

The board noted appellant's concession that all of the claimed limitations except for the carbon range are in the prior art and characterized the issue by noting that "this case boils down to the single question of whether or not the claimed range 0.03% to 0.07% is *anticipated* by the range 0.02% to 0.03% (Goss) or 0.02% to 0.035% (Crede et al.)," which question the board answered in the "affirmative." (Emphasis ours.)

The board summarized appellant's arguments before it as follows:

The appellant contends that the claimed 0.03% to 0.07% carbon in the starting steel is critical to the obtention of certain beneficial results recited in the specification. He additionally urges that the practitioner of the subject art attempts to have as little carbon present in the starting steel as possible, whereas the claimed range is above that sought in the art. The appellant also asserts that the prior art did not recognize that the claimed carbon range results in any advantages. In support of his contentions, the appellant has submitted the affidavits of several individuals who are asserted to be eminent in the subject art. In ad-

dition, the appellant has cited several decisions [Becket v. Coe, 98 F.2d 332, 38 USPQ 26 [24 CCPA 992] (App.D. C.1938); Ex parte Selby, 153 USPQ 476 (Pat.Off.Bd.App.1966); Ex parte Thumm, 132 USPQ 66 (Pat.Off.Bd. App.1960)] purportedly standing for the proposition that even where a claimed range is inclusive of, falls within or overlaps that taught by a reference, the claim may be patentable over the reference.

The board concluded, however, that the facts of this case were much "more closely akin to the facts in such cases as" In re Perkins, 346 F.2d 981, 52 CCPA 1501 (1965); In re Nehrenberg, 280 F.2d 161, 47 CCPA 1159 (1960); and Ex parte Cook, 105 USPQ 504 (Pat.Off.Bd.App.1958); and concluded that each of the examiner's rejections should be sustained "on the basis that the claimed range of carbon content is *anticipated* by the ranges taught by each of Goss and Crede et al. \* \* \*." (Emphasis ours.)

### Appellant's Arguments

Appellant expands upon his arguments before the board. He particularly emphasizes the cases cited to the board, adding In re Orfeo, 440 F.2d 439, 58 CCPA 1123 (1971), which, in his view, "indicates that claims may be allowed to a limited composition, or to a method with a limited composition, where the prior art contains broad or overlapping disclosures of similar compositions, providing that the applicant can show criticality (new and unexpected results) with respect to the limits of the narrower claimed invention." Appellant's position is that if an applicant can be allowed to patent a narrow range within a broader prior art range by showing unexpected properties or results, then he should be able to claim a range which only "touches" or "somewhat overlaps" that of the prior art. Appellant's showing of results is discussed in the next section.

### Arguments of the Solicitor

Dealing with the rejections, the solicitor asserts that claims 14, 15, 17–19, and 21 were properly rejected under § 102 because appellant's range touches that of Goss at 0.03% carbon. The solicitor relies upon *Nehrenberg*, supra, with the following argument:

In that decision, the Court addressed a rejection of claim 1 over a patent to Binder as follows:

"Thus in the case of claim 1, Binder discloses proportions of every ingredient except carbon which fall within the claimed range. *Binder's lower limit for nickel is the same as the claimed upper limit,* but in the case of all other ingredients Binder's range includes all or at least three-fourths of the claimed range. \* \* \* Aside from the carbon content, therefore, claim 1 is *anticipated* by Binder." 47 CCPA at 1162 (emphasis added).

The "touching" of the carbon ranges in the present case is comparable to the "touching" of the nickel ranges in *Nehrenberg*. Since it is conceded that "except for the range of carbon specified in step (a) of claim 14, the process defined by the claims is precisely disclosed in the references as applied by the examiner" \* \* \* and since it is clear that the "touching" of the carbon ranges constitutes an anticipation under *Nehrenberg*, it is submitted that the present rejection under 35 USC 102 is proper and should be sustained.

As to the obviousness rejection, the solicitor asserts that either Goss or Crede render the invention prima facie obvious and that appellant has not made a convincing showing to rebut this finding. He disputes the assertion in appellant's affidavits that his discovery involving higher levels of carbon is unobvious because the prior art, Goss and Crede, "imply that lower carbon levels

are preferable," noting that "the art speaks for itself" and both patents speak of their ranges as "typical preferred ranges" with no suggestion of a preference at either end of the ranges.

To establish "unexpected" results and thus the alleged "criticality" of the claimed range, appellant relies upon three tables in his application and the following figure therein:

FIG. 2.

The graph at the top of the figure represents permeability and the graph at the bottom core loss. The examiner criticized the data in the tables, particularly that in Table II where core loss and permeability are given for various steels, as not representing a comparison of the best prior art since the only steel compared with the steels within or above the claimed range is a steel with a carbon content of 0.007% before processing. The solicitor agrees with that criticism, noting that the pertinent ranges of Goss and Crede "both contain minimum carbon contents of 0.02%. * * * Therefore, whatever comparisons might be illustrated by the Tables are not pertinent to the unobviousness of the present invention over Goss alone or in view of Crede et al."

In response, appellant submitted a memorandum (Rule 116 amendment) and affidavits of three individuals (the allegations of which are as alike as three peas) including John H. Crede, one of the inventors of the Crede reference, in an attempt to show the unobviousness of the use of starting materials having higher carbon content and the criticality of appellant's claimed range. Appellant's memorandum contained the following table of "additional data which clearly compares the permeability and core loss for grain oriented silicon steel produced from carbon contents ranging from 0.020 to 0.035":

| | | MAGNETIC PROPERTIES | | | | |
| | | Core Loss (WPP @ 1 SKB) | | Permeability ($\mu$ @ 10H) | | |
| Initial Carbon (%) | Number of Coils | $\leq 0.519$ (%) | $\geq 0.580$ (%) | $\geq 1820$ (%) | $\geq 1800$ (%) | $\leq 1780$ (%) |
|---|---|---|---|---|---|---|
| 0.020-0.023 | 294 | 12 | 11 | 8 | 51 | 24 |
| 0.024-0.027 | 462 | 29 | 6 | 26 | 67 | 16 |
| 0.028-0.031 | 281 | 42 | 6 | 35 | 78 | 13 |
| 0.032-0.035 | 156 | 58 | 4 | 55 | 85 | 10 |

As explained by appellant, the table "shows the percentage of the steel, at varying carbon levels, which had a core loss at or below 0.518 [sic] and at or above 0.580 and the percentage of the steel which had a permeability at or above 1820, at or above 1800 and at or below 1780." As is evident here and in Fig. 2, there is some decrease in core loss and increase in the permeability apparent when the carbon content of the starting material is increased.

The solicitor challenges appellant's reliance upon Fig. 2 as there is no indication that it wasn't prepared using the data in the tables in the specification, which, as already noted, did not compare the best prior art. The solicitor further challenges appellant's reliance upon the information in appellant's Rule 116 amendment for several reasons, embodied in the following paragraph from his brief.

Appellant's reliance * * * on the unsworn data presented at R–37 [the above table] is clearly misplaced. Since the data is unsworn, it can be taken merely as argument and not to establish facts. In re Mehta, 52 CCPA 1615, 1624, 347 F.2d 859, 146 USPQ 284 (1965). Even if the data were presented in affidavit form it is inconclusive as to the unobviousness of the claimed process. Crede et al. disclose a typical specific analysis of a silicon steel containing 0.028% carbon * * *. The data at R–37 groups silicon steels containing 0.028% carbon with steels containing 0.031% carbon. Therefore, it is impossible to establish from the data presented a critical difference resulting from the practice of appellant's method (which would include treating silicon steels containing 0.030 and 0.031% carbon) rather than practicing Goss's method on a steel having the typical specific analysis disclosed by Crede et al. Indeed, appellant's grouping of silicon steels containing 0.028% carbon with steels containing 0.031% carbon appears to substantiate the

propriety of the rejection. Such grouping would appear to reflect that applicant does not regard the difference between 0.028 and 0.031% carbon to be substantial.

## OPINION

### Anticipation, § 102

The first thing to make clear under this heading is that the board was in error in speaking of "anticipation" when dealing with any reference other than Goss. There is no indication that the broad intended to make a new ground of rejection under Rule 196(b) and, given the differences which clearly exist between the claimed invention and the process of Crede, such a rejection would have been improper. The only rejection properly characterizable as anticipation under § 102 is of claims 14, 15, 17–19, and 21 in view of Goss.

■ Appellant's arguments seem never really to appreciate the rejection as one for anticipation under § 102, since his contention throughout is that he has established new and unexpected results within a critical range of carbon content, while the prior art taught away from the use of steel having such a high carbon content. If the rejection under § 102 is proper, however, appellant cannot overcome it by showing such unexpected results or teaching away in the art, which are relevant only to an obviousness rejection. In re Wiggins, 488 F.2d 538 (CCPA 1973).

Appellant has raised an interesting question, however, by his citation of several cases wherein the prior art taught a broad range and the inventor was held entitled to claims limited to a narrow range within the broad range by showing criticality of and the existence of unexpected properties within the claimed range. Appellant's argument seems to be that if such an invention is patentable on the basis of such a showing, then his invention, which only *touches* or *narrowly overlaps* the range of the prior art, ought likewise to be patentable.

Appellant's arguments suggest that the disclosure of the *end point* of the range of the prior art ought to be given no greater significance as prior art than *individual points* within the range disclosed by a prior art reference, there being no specific disclosure of working examples or specific analyses in either of the principal references of carbon contents within appellant's claimed range.

Because of the view we take of the rejection for obviousness under § 103 and because of appellant's failure to recognize in his arguments the difference between § 102 and § 103, we find it unnecessary to, and do not, deal with the rejection under § 102.* We would be amiss, however, if we did not point out to the solicitor that the quotation from our opinion in *Nehrenberg* hardly decides this case. First, the court in *Nehrenberg* appears to have used the term "anticipated" as loosely as the board did here, in any event qualifying its use by saying "Aside from the carbon content," and we are not at all convinced that the rejection in *Nehrenberg* was under § 102. Secondly, the solicitor's quotation from *Nehrenberg* too artfully juxtaposes the end of one paragraph with a sentence taken from near the end of the next long paragraph, a practice which is to be discouraged.

### Obviousness, § 103

■ There is no question that the claimed invention is rendered prima facie obvious by the teachings of Goss. The process taught by Goss is similar to that claimed by appellant, and the claimed range of carbon in the steel used as a starting material touches that in the "typical preferred range" of the reference.

We agree with the solicitor that appellant has not rebutted this prima facie case by establishing the existence of unexpected properties in the range claimed or by showing that the art in any material respect taught away from the use of the carbon range claimed.

While there are identical statements in the three affidavits submitted by appellant asserting that "the trend in the steel industry was to produce grain oriented silicon steel from starting materials having lower and lower initial carbon contents," the cited references state no preference for lower carbon contents, only "typical preferred ranges." We are thus not convinced that there was sufficient teaching away in the art to overcome this strong case of obviousness made out by Goss.

Further, we agree with the solicitor that appellant has not established, by the information supplied in the tables in his specification and amendment, a comparison of the best prior art cited by the examiner. See In re Caveney, 386 F.2d 917, 55 CCPA 721 (1967). Nor does the data in the table submitted in the Rule 116 amendment establish criticality of the lower limit of appellant's claimed invention, see In re Shepard, 319 F.2d 194, 50 CCPA 1439 (1963).

Accordingly, the rejection of claims 14–21 is affirmed.

Affirmed.

---

* Appellant was not aided in separating the two sections by the opinion of the board here, which, as noted, lumped everything together under the term "anticipation."