**In the Matter of the APPLICATION of Peter HOFFMANN, Otto Weiberg and Wolfgang Weigert.**

**Patent Appeal No. 76–724.**

United States Court of Customs and Patent Appeals.

June 9, 1977.

Alvin Guttag, Watson T. Scott, William Bullinger Cushman, Darby & Cushman, Washington, D.C., attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Jack E. Armore, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claims 3–9, 11, and 13–17 in application serial No. 129,170, filed March 29, 1971, for "Process for Production of Percarboxylic Acid," as obvious under 35 U.S.C. § 103 from Korach et al.[1] (hereinafter Korach) in view of Gibbs et al.[2] (hereinafter Gibbs). We affirm.

The claimed invention is an improved process for the production of percarboxylic

---

1. U.S. Patent No. 3,284,491, issued November 8, 1966.

2. U.S. Patent No. 3,624,053, issued November 30, 1971, on application serial No. 290,184, filed June 24, 1963.

acids through a catalytic equilibrium reaction between hydrogen peroxide and a carboxylic acid or ester thereof. The basic reaction is, admittedly, well known and has traditionally been catalyzed by strong mineral acids, such as sulfuric acid, or strong cation exchange resins in the acid form. Appellants' invention is said to reside in the discovery that particular cation exchange resin catalysts, when used in this reaction, are more resistant to degradation than the prior art catalysts. These degradation-resistant catalysts are described as containing "perfluoroalkyl groups," that is, hydrocarbon groups where all hydrogen atoms are replaced by fluorine atoms, while the traditional prior art catalysts, such as sulfonated styrene polymers, contain no such groups.

Claim 17 reads:

17. In the process for the production of a percarboxylic acid by reacting a carboxylic acid selected from the group consisting of saturated aliphatic carboxylic acids having 1 to 18 carbon atoms, benzoic acid, phthalic acid, terephthalic acid, chlorobenzoic acid, nitrobenzoic acid and cyanobenzoic or a saturated alkyl ester of such acid, said alkyl group having 1 to 8 carbon atoms, with hydrogen peroxide in aqueous or organic solvent in the presence of a cation exchange resin catalyst for the reaction during said reaction the improvement comprising employing as the cation exchange resin a strongly acid cation exchange resin having perfluoroalkyl groups at 20–80°C.

The remaining claims are all dependent from claim 17.

The following table appears in appellant's brief and summarizes the comparative examples in the specification. The table purports to show the respective lives in the claimed process of prior art catalysts (Examples 1–5) and of perfluoroalkylated catalysts (Examples 6 and 7, two right-hand columns).

| Example No. | Residence Time hrs. Before Catalyst Breakdown | Degree of Improvement | |
| --- | --- | --- | --- |
| | | Example 6 4000 hrs. | Example 7 1500 hrs. |
| 1 | 100 | 40X | 15X |
| 2 | 500 | 8X | 3X |
| 3 | 232 | 17.2X | 6.5X |
| 4 | 148 | 27X | 10.1X |
| 5 | 216 | 18.5X | 6.9X |

The board sustained an obviousness rejection of the appealed claims under 35 U.S.C. § 103 based on the combined teachings of Korach and Gibbs. Korach teaches basically that which appellants concede to be prior art, namely, the reaction of a carboxylic acid with hydrogen peroxide to form a percarboxylic acid using, as a catalyst, either sulfuric acid or "strong cation exchange resins in the acid form." Gibbs discloses cation exchange resin polymers of trifluorovinyl sulfonic acid having the repeating unit [—CF₂—CF—], which is seen to

SO₃H

contain a perfluoroalkyl group, as claimed. Gibbs states:

The surprising feature of the polyacids of the present invention, however, is their utility as acid catalysts. Thus, it was found that the polymeric trifluorovinyl sulfonic acids catalyze reactions normally catalyzed by sulfuric acid * * *. The advantages resulting from the use of polymeric trifluorovinyl sulfonic acid as an acid catalyst are substantial. Aside from the sulfonic acid group, the polymeric trifluorovinyl sulfonic acids of the present invention are extremely temperature stable and chemically inert and, thus, do not interfere in the reaction ca-

talyzed. They permit the use of highly corrosive or reactive reagents and, furthermore, permit the operation of the acid catalyzed reaction at extremely high temperatures.

Appellants conceded before the board, as they do here, that the use of the Gibbs catalyst in the Korach reaction would have been obvious but for the alleged unexpectedly superior degradation resistance which the comparative examples are said to establish. In the opinion of the board, however, Gibbs' description of his catalysts as "extremely temperature stable and chemically inert" would have fairly suggested such degradation resistance.

The issue presented by this appeal is, thus, whether the results illustrated in the table, supra, are merely those which one of ordinary skill in the art would have expected from Gibbs or whether they amount to a patentably significant unexpected result.

Appellants contend, inter alia, that the *degree* of degradation resistance could not have been foreseen, that Gibbs does not suggest that his catalysts would be resistant to the "strong oxidizing conditions" of the claimed process, and that Gibbs nowhere suggests that his catalysts are any more resistant to degradation than prior art cation exchange resin catalysts. An attempt is made to analogize the present case to *In re Orfeo,* 440 F.2d 439, 58 CCPA 1123, 169 U.S.P.Q. 487 (1971), where improved results, arising from the use of old materials in an old process, were found to be unexpected where the result could not be linked to known properties of the old material.

The solicitor argues that unobviousness can only be predicated on *unexpected* superiority. It is contended that Gibbs' disclosure of chemical inertness fully comprehends the degradation resistance noted by appellants.

OPINION

The use of the Gibbs catalyst in the claimed process we will assume, arguendo, yields superior results. Nevertheless, we agree with the board that such results would not have been unexpected. Appellants' reliance on *In re Orfeo,* supra, in this regard is misplaced. There, an unexpected result was found to reside in the low power requirement of an azeotropic mixture of fluorocarbon refrigerants used in a refrigeration process. The board had alleged that such would have been expected in view of the known lower boiling point of the mixture. We rejected the board's contention because there was no indication that the lower boiling point was directly responsible for the lower power requirement. In the present case, the PTO does not contend that a known superior property of the Gibbs catalyst would lead one to expect that *some other property* would also be improved, as in *Orfeo,* nor does it rely on some vague statement of generally improved properties. Rather, the board found in *Gibbs* a precise articulation of the very property appellants contend was unexpected, namely, chemical inertness with the attendant ability to use highly corrosive reactants. When the prior art and appellants' evidence are viewed objectively and as a whole, it is apparent that the two reported properties are fundamentally the same.

We cannot accept appellants' contention that Gibbs does not suggest the superiority of perfluoroalkylated catalysts over prior art cation exchange resin catalysts. Nor can we accept the assertion that Gibbs does not predict the *degree* of superiority noted by appellants. Gibbs' description of the chemical inertness of these compounds as a *substantial advantage* attendant upon their use is inconsistent with both propositions. Finally, we reject appellants' argument that the reference fails to suggest the resistance of the perfluoroalkylated catalysts to "strong oxidizing conditions." In our opinion, the term "highly corrosive" used by Gibbs connotes not only extremes of pH but also extreme oxidizing or reducing environments.

The decision of the board is *affirmed.*

*AFFIRMED.*