**Application of Hamish Christopher SWAN WOOD, Norman Whittaker, Irene Stirling and Kyuji Ohta.**

**Appeal No. 78–518.**

United States Court of Customs and Patent Appeals.

Aug. 31, 1978.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE, and MILLER, Associate Judges.

LANE, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 1–8 of application serial No. 438,379, filed January 31, 1974, for "Biologically Active Compounds." We affirm.

The subject matter of this appeal involves certain biologically active derivatives of pteridine [1] and pharmaceutically acceptable salts thereof. The claimed compounds, per se, are disclosed as possessing antimicrobial activity,[2] albeit to a limited extent with certain bacteria including, *inter alia,* Escherichia coli (E. coli). However, appellants disclose that when the claimed compounds are combined with competitors of p-aminobenzoic acid, *e. g.,* sulphonamides, or with selective inhibitors of dihydrofolic acid reductase, *e. g.,* pyrimidines, or with a combination of both of these types of antimicrobial agents, a "synergistic effect" is produced.[3] Specifically, appellants assert that when the claimed compounds are combined with a normally ineffective amount of the competitors or inhibitors (or both), the resulting composition acts as an effective antimicrobial agent, thereby reducing significantly the amount of the competitors and inhibitors required. Thus, appellants' compounds are said to have a "potentiating effect" vis-à-vis the competitors and inhibitors.

Donald Brown, Robert F. O'Connell, Boston, Mass., Dike, Bronstein, Roberts, Cushman & Pfund, Boston, Mass., Attys. of record, for appellants; Martin P. Hoffman, Donald M. Sandler, Arlington, Va., Hoffman & Sandler, Arlington, Va., of counsel.

1. Pteridine is represented by the following structural formula:

2. The claimed compounds inhibit one of the enzymes involved in the biosynthesis of dihydrofolic acid, which acid is essential to the growth of microorganisms.

3. A detailed discussion of the biosynthetic reaction scheme involved is not essential to an understanding of this appeal. Suffice it to say that the aforementioned competitors and inhibitors preclude the formation of certain metabolites which are essential for the biosynthesis of several biologically important compounds.

**640**

The appealed claims read:

1. A compound of formula (I), or a tautomeric form thereof,

wherein $R^1$ and $R^2$ are the same or different and each is lower alkyl or $R^1$ and $R^2$, together with the carbon atom in the pteridine ring structure, form a spirocycloalkyl ring system having 4 to 6 carbon atoms outside the pteridine ring structure.

2. A compound as claimed in claim 1, wherein $R^1$ and $R^2$ are lower alkyl.

3. A pharmaceutically acceptable salt of 2-amino-4-hydroxy-7,7-diethyl-7,8-dihydropteridine-6-carbox-aldehyde or a tautomeric form thereof.

4. A pharmaceutically acceptable salt of 2-amino-4-hydroxy-7,7-dimethyl-7,8-dihydropteridine-6-carbox-aldehyde or a tautomeric form thereof.

5. 2-amino-4-hydroxy-7,7-diethyl-7,8-dihydropteridine-6-carboxaldehyde or a tautomer thereof.

6. 2-amino-4-hydroxy-7,7-dimethyl-7,-8-dihydropteridine-6-carboxaldehyde or a tautomer thereof.

7. A pharmaceutically acceptable salt of a compound of formula (I)

wherein $R^1$ and $R^2$ are the same or different and each is lower alkyl or $R^1$ and $R^2$, together with the carbon atom in the pteridine structure form a spirocycloalkyl ring system having 4 to 6 carbon atoms outside the pteridine ring structure or a tautomeric form thereof.

8. A salt as claimed in claim 7 of a base or a mineral or organic acid.

The examiner rejected claims 1–8 under 35 U.S.C. § 103 as obvious over the teaching of Mitsuda et al. (Mitsuda).[4] Mitsuda discloses, *inter alia,* a compound which differs from the compounds of claim 1 in that the former is unsubstituted at the 7,7-position whereas the latter are di-substituted.[5] The Mitsuda compound (referred to by Mitsuda as compound III) is represented by the following structure: [6]

Mitsuda indicates that this compound inhibits the growth of E. coli. The position of the examiner was that the claimed compounds were prima facie obvious over Mit-

---

4. Mitsuda & Suzuki, *Effects of 2-amino-4-hydroxy-6-carboxy-7,8-dihydropteridine and 2-amino-4-hydroxy-6-formyl-7,8-dihydropteridine on the growth of Escherichia coli,* 75 CHEMICAL ABSTRACTS 72963n (1971).

5. Appellants refer to their compounds as gem dialkyl substituted at the 7,7- position, or, in short, gem substituted.

6. Appellants have indicated that this compound can also be written as:

suda compound III because of the close structural similarity between them, and because the prior art compound, like the claimed compounds, is taught to possess antimicrobial activity.

The board, in sustaining the rejection, was in complete agreement with the reasoning of the examiner. It, like the examiner, viewed *In re Lohr,* 317 F.2d 388, 50 CCPA 1274, 137 USPQ 548 (1963), as supportive of the prima facie case. Absent persuasive objective evidence, the board noted, the rejection must be sustained. The board adhered to its decision on reconsideration.

## OPINION

■ In view of the close structural similarity between the claimed compounds and Mitsuda compound III, *cf. In re Hoke,* 560 F.2d 436, 195 USPQ 148 (Cust. & Pat.App. 1977); *In re Lohr, supra,* and the fact that the latter is disclosed as possessing antimicrobial activity, we believe that one skilled in the art would have been, prima facie, motivated to make the claimed compounds in the expectation that they, too, would possess antimicrobial activity. *See In re Hoch,* 428 F.2d 1341, 57 CCPA 1292, 166 USPQ 406 (1970).

Appellants' stance on appeal is that the PTO has failed to establish a prima facie case. In support of their position, they rely on a passage from a text on heterocyclic compounds.[7] To briefly summarize, the passage indicates that the 5,6,7,8-tetrahydropteridines unsubstituted in the pyrazine ring[8] are extremely susceptible to dehydro-

genation.[9] Based on this passage, appellants make the following argument:

It is appellants' position that in fact there is a lack of structural similarity in this case as would be readily apparent to a skilled chemist for the reason that the gem dialkyl substitution in the saturated ring at the 7,7 position effectively blocks the 7,7 position and thus the possibility of ring oxidation (i. e., oxidative dehydrogenation).

This is not the situation with Mitsuda et al. compound III in that hydrogens at the 7,7 position would be expected to readily oxidize particularly when subjected to enzyme activity in a biological system. Oxidation at the 7,7 position would ordinarily be expected to occur since partially saturated ring compounds of this type tend to be readily oxidized to the more energetically favored fully aromatic ring structure.

■ This argument, in our view, fails to undermine the presumed expectation that the claimed compounds would have been expected to have similar properties to the structurally similar Mitsuda compound III since there is insufficient evidence of record on how one skilled in the art would have perceived the ability to undergo dehydrogenation, i. e., whether one skilled in the art would have expected this ability, or lack thereof, to affect antimicrobial activity.

■ We are mindful of the fact, as noted by the dissent, that Mitsuda teaches two additional compounds represented by the following structures

7. 9 HETEROCYCLIC COMPOUNDS: Pteridines, Alloxazines and Compounds with 7-Membered or Larger Rings 38–39 (R. Elderfield ed. 1967).

8. The pyrazine ring is represented by the following structure:

9. The specific example given is the dehydrogenation of 2-amino-4-hydroxy-5,6,7,8-tetrahydropteridine sulfite, which has the following structure:

**642**

I

OH

N 3 4 N 5 CO$_2$H

2 1 6 H

H$_2$N N 8 7 H

NH

II

OH

N 3 4 N 5 CO$_2$H

2 1 6

H$_2$N N 8 7 N

and that compound I inhibits the growth of E. coli whereas compound II does not. In our view, this would have been insufficient evidence for one skilled in the art to determine which position of Mitsuda compound III effects antimicrobial activity since this compound differs from both Mitsuda compounds I and II in the substituent at the 6-position. On this record, we will not assume that one skilled in the art would have viewed the 6-position as having no affect on antimicrobial activity.

■ Turning to the alleged potentiating effect of the claimed compounds, we agree with appellants that an unexpected property possessed by a compound would be evidence of its unobviousness.[10] *In re Albrecht,* 579 F.2d 92, 198 USPQ 208 (Cust. & Pat.App.1978). However, on this record, it is our view that appellants have not established that the claimed compounds unexpectedly increase the antimicrobial activity of the disclosed competitors and inhibitors.

10. We will assume, without deciding, that potentiation is a property which inures to the claimed compounds, *per se,* in contradistinction to being a combined result of all the components of the disclosed, but not claimed, compositions.

11. Claims 3 and 5.

12. Claims 3, 4, 7, and 8.

Specifically, appellants have not introduced test results to establish that when the claimed compounds are combined with the competitors and inhibitors, the antimicrobial activity of the resulting compositions are unexpectedly greater than what would have been expected from the cumulative activity of the separate components. Mere lawyer's arguments and conclusory statements in the specification, unsupported by objective evidence, are insufficient to establish unexpected results. *In re Greenfield,* 571 F.2d 1185, 197 USPQ 227 (Cust. & Pat.App.1978); *In re Lindner,* 457 F.2d 506, 59 CCPA 920, 173 USPQ 356 (1972).

■ Finally, appellants argue that neither the examiner nor the board gave separate consideration to the claims directed to diethyl substitution[11] or to pharmaceutically acceptable salts.[12] Since appellants failed to argue separately the patentability of these claims below, all of the appealed claims will stand or fall with claim 1. *In re Bayer,* 568 F.2d 1357, 196 USPQ 670 (Cust. & Pat.App.1978).

■ Summarizing, we hold that the PTO has established a prima facie case of obviousness and that appellants have failed to satisfactorily rebut it. Accordingly, for the reasons set forth herein, the decision of the board is *affirmed.*

*AFFIRMED.*

MILLER, Judge, dissenting.

I cannot agree with the conclusion in the majority opinion that one skilled in the art would have had a "presumed expectation" that the claimed compounds would possess properties similar to those of Mitsuda compound III.

The Mitsuda reference[1] discloses three compounds:[2]

1. Mitsuda & Suzuki, *Effects of 2-amino-4-hydroxy-6-carboxy-7,8-dihydropteridine and 2-amino-4-hydroxy-6-formyl-7,8-dihydropteridine on the growth of Escherichia coli,* 75 Chemical Abstracts 72963n (1971).

2. For clarity, all compounds have been depicted in the tautomeric form with a hydroxyl (–OH) group at the 4-position. *See* note 6 of the majority opinion and the accompanying text.

I

OH

$N_3$ 4 5 N

$H_2N$ 2 1 N 8 7 N H $CO_2H$ H H

6

OH

5 N CHO

$N_3$ 4 6 $R^1$

$H_2N$ 2 1 N 8 7 N H $R^2$

The Mitsuda reference reports that compounds I and III inhibit the growth of E. coli and that compound II (which does not have the two hydrogen substituents at the 7-position) does not. Thus, the reference upon which the PTO relies to establish its *prima facie* case teaches that changes in the number and/or type of substituents at the 7-position of these pteridine compounds can have a dramatic effect upon their antimicrobial activity. It follows that, with only the three compounds of the Mitsuda reference before him, one skilled in the art would not have had a "presumed expectation" that the claimed compounds, which substitute lower alkyl groups (e. g., methyl (–$CH_3$) or ethyl (–$C_2H_5$) groups) for *both* available hydrogens at the 7-position, would exhibit antimicrobial activity.[4] At most, he would have had a presumed hope that the claimed compounds would have the antimicrobial activity.

The majority opinion dismisses the significance of the Mitsuda teaching by noting that compounds I and III differ in the substituent at the 6-position. However, no reason is given (nor would it appear to have been readily apparent to one skilled in the art) for expecting that the substitution of a carbonyl (–CHO) group for a carboxyl (–$CO_2H$) group would have any effect upon antimicrobial activity. Indeed, the Mitsuda reference suggests that there would be no effect, since compounds I and III differ

II

OH

$N_3$ 4 5 N $CO_2H$

$H_2N$ 2 1 N 8 7 N

6

III [cited by the Patent and Trademark Office ("PTO")]

OH

$N_3$ 4 5 N CHO

$H_2N$ 2 1 N 8 7 N H H H

6

The generic class of compounds claimed may be represented as follows, with $R^1$ and $R^2$ being the same or different and each being lower alkyl:[3]

---

3. The appealed claims are reproduced in the majority opinion.

4. Although appellants have not argued specifically the import of Mitsuda compounds I and II, they have argued that the Mitsuda reference is insufficient to make out a *prima facie* case, because the reference does not demonstrate that the gem dialkyl structure (substitution of lower alkyl groups for both available hydrogens at the 7-position) is well known in the art

for its antimicrobial activity. *Cf. In re Mercier,* 515 F.2d 1161, 185 USPQ 774 (Cust. & Pat.App. 1975). Moreover, citing the treatise on heterocyclic compounds (*infra* note 5), appellants have argued that the substituents at the 7-position prevent the claimed compounds, like Mitsuda compound II, from undergoing dehydrogenation; whereas, the Mitsuda compound III undergoes dehydrogenation.

**644**

only in the substituent at the 6-position; yet both have antimicrobial activity. On the other hand, since it appears that the difference in the substituents at the 7-position of Mitsuda's compound II is the reason for no antimicrobial activity, one skilled in the art would have expected that a difference in the substituents at the 7-position of the claimed compounds would affect the antimicrobial activity.

Thus, the teachings of the Mitsuda reference do not establish a *prima facie* case of obviousness. This conclusion is reinforced by the treatise on heterocyclic compounds.[5] This treatise teaches that compounds such as Mitsuda's compounds I and III "are extremely susceptible" to the elementary chemical reaction of dehydrogenation at the 7-8 positions; whereas, Mitsuda compound II and the claimed compounds cannot undergo dehydrogenation due to the number and type of substituents at the 7-position. With this additional teaching, one skilled in the art would have had no reason for predicting the properties of the compound appellant is claiming.

In view of the foregoing, I would, without reaching the issue of the potentiating effect of the claimed compounds, reverse the decision of the board.

---

5. 9 HETEROCYCLIC COMPOUNDS: Pteridines, Alloxazines and Compounds with 7- Membered or Larger Rings 38–39 (R. Elderfield ed. 1967).