**In re Michael GEISLER, Rudolf Kotter–Faulhaber, Susanne Wuerz and Michael Jung.**

No. 96–1362.

United States Court of Appeals, Federal Circuit.

July 7, 1997.

F. Brice Faller, Felfe & Lynch, New York City, argued, for appellants. With him on the brief was John E. Lynch.

Craig R. Kaufman, Associate Solicitor, Office of the Solicitor, Patent and Trademark Office, U.S. Department of Commerce, Ar-

lington, VA, argued, for appellee. With him on the brief were Nancy J. Linck, Solicitor, Albin F. Drost, Deputy Solicitor, and David J. Ball, Jr., Associate Solicitor.

Before PLAGER, CLEVENGER and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

In this appeal from the Patent and Trademark Office Board of Patent Appeals and Interferences, the inventors challenge the decision of the patent examiner and the Board rejecting the inventors' patent claims for obviousness under 35 U.S.C. § 103. We hold that the critical factual findings underlying the Board's legal conclusion of obviousness are not clearly erroneous, and we therefore affirm.

I

The inventors, appellants Michael Geisler, Rudolf Kotter–Faulhaber, Susanne Wuerz, and Michael Jung (collectively "Geisler"), filed an application for a patent on a reflective article having a multilayer coating. After a number of the original claims were canceled, one independent claim and six dependent claims remained for examination. Claim 44, the independent claim, reads as follows:

A reflective article comprising

a substrate,

a first layer on said substrate, said layer consisting essentially of carbon and at least one element from the group consisting of O, Si, and H,

a second layer on said first layer, said second layer consisting essentially of a metal, and

a third layer on said second layer, said third layer consisting essentially of carbon and at least one element from the group consisting of O, Si, and H, said third layer being 50 to 100 Angstroms thick.

Before the examiner, the question of patentability turned on whether the claimed invention would have been obvious in light of certain prior art references or whether the claimed thickness of the third layer of the coating (also referred to as the protective layer) rendered the claimed invention nonobvious. The application included the results of wear resistance tests that the inventors ran on the protective layer of their invention. That layer is designed to protect the metallic layer from abrasion and corrosion, and thus extend the useful life of the reflective surface.

Geisler conducted two sets of tests, using what the application described as the "standard method" for testing coated surfaces for wear resistance. Geisler tested protective layers of different thicknesses ranging from 900 Angstroms to 50 Angstroms. The first test was conducted shortly after the coating process was completed, and the second test was conducted "a few days later." The first test showed that, in general, the thinner protective layers exhibited better wear resistance. The second test showed the same trend, but in that test the thinner protective layers exhibited a somewhat greater and more consistent increase in wear resistance. For example, in the first test the 50 Angstrom layer exhibited about 20 percent better wear resistance than the 300 Angstrom layer, while in the second test the 50 Angstrom layer exhibited about twice as much wear resistance as the 300 Angstrom layer. After setting forth the two sets of test results, the application concluded that a protective layer of 50 Angstroms "provides a very good protection and, moreover, is very inexpensive in its production."

The examiner rejected all seven claims on the ground that the claimed invention would have been obvious in light of two prior art patents—U.S. Patent No. 4,956,196 to Wagner et al. and U.S. Patent No. 4,085,248 to Zehender et al. The Wagner reference discloses a three-layer reflective coating on a substrate, in which the second layer is a metal and the first and third layers are a polymerizable substance, such as hexadimethylsilane. Wagner, however, does not make any disclosure with respect to the thickness of the third layer.

The Zehender patent discloses a two-layer reflective coating, and it recites that the second (or protective) layer should be sufficiently thick "to provide the protection desired and still be colourless." Those two goals

would be obtained, the Zehender specification explains, for layers polymerized from hexamethyldisiloxane, "for example, in thicknesses of 10 to 60 nm [*i.e.*, 10 to 60 nanometers, which is equal to 100 to 600 Angstroms], preferably between 20 to 30 nm [*i.e.*, 200 to 300 Angstroms]." The Zehender specification adds that "[i]n general, for suitable protection the thickness of the protective layer should not be less than about 10 nm [*i.e.*, 100 Angstroms]."

Focusing on the claimed thickness range for the protective layer, the examiner explained that "[t]he subject matter as a whole would have been obvious to one having skill in the art at the time the invention was made," because it would have been obvious to select the lower thickness limit of 100 Angstroms disclosed by Zehender, which is within the claimed thickness range of 50 to 100 Angstroms set forth in claim 44, the independent claim. Overlapping ranges, the examiner stated, "have been held to be a prima facie case of obviousness."

Following a final rejection, Geisler appealed to the Board of Patent Appeals and Interferences, which upheld the examiner's decision. Before the Board, Geisler argued that the Zehender reference does not render the invention unpatentable, because the invention exhibits unexpected results over the claimed range and because the Zehender reference teaches away from the invention. Geisler explained that because Zehender indicates that the protective layer should be at least 100 Angstroms thick, and preferably 200 to 300 Angstroms thick, it must be regarded as teaching away from the 50 to 100 Angstrom range recited in the application. The discovery underlying the claimed invention, according to Geisler, is that at least down to a thickness of 50 Angstroms, the protective layer is more wear resistant as it becomes thinner, a counterintuitive result. Geisler argued that Zehender suggests just the opposite, and therefore the invention would not have been obvious in light of Zehender, even though the claimed range of 50 to 100 Angstroms shares an endpoint with the 100 to 600 Angstrom range disclosed in Zehender.

The Board held that Geisler had failed to rebut the prima facie case of obviousness

either "by establishing unexpected properties in the claimed range" or "by showing that the prior art in material respects teaches away from the claimed range." The Board rejected Geisler's argument that Zehender teaches away from the use of a thin protective layer in the claimed range, noting that Zehender specifically refers to the use of a protective layer 100 Angstroms thick and suggests that a somewhat thinner layer could be used effectively as well. With respect to Geisler's "unexpected results" argument, the Board concluded that one of ordinary skill in the art would not have found the wear resistance exhibited by the protective layer over the claimed range to be unexpected.

On Geisler's request for reconsideration, the Board reaffirmed its ruling. The Board explained that "one of ordinary skill in the art would have tested the range set forth by Zehender and would have perceived, as did appellants, that the thinner the coating, the more resistant, and thus the more desirable." Accordingly, the Board concluded, "we are of the opinion that [Geisler's] results are nothing more than that which would have been perceived, and as a consequence, expected by one of ordinary skill in this art in seeking optimum values within the thickness range taught by Zehender." The Board added that even if Geisler's results were considered unexpected, "it would still be questionable whether the appealed claims patentably distinguish over the prior art." The Board explained that because Zehender explicitly taught the use of a protective layer 100 Angstroms thick, Geisler's discovery "that a layer 100 Å thick wears better than a thicker layer would appear to constitute merely the recognition of a latent property (i.e., wearability) possessed by Zehender's 100 Å thick layer." The Board based its conclusion on what it described as the "well settled rule that the mere recognition of latent properties in the prior art does not render nonobvious an otherwise known invention."

Geisler took this appeal from the decision of the Board upholding the examiner's rejection.

## II

■ The Board's decision that Geisler failed to rebut the prima facie case of obvi-

ousness is based on two findings: (1) that Geisler did not satisfy his burden of proving that the claimed protective layer produced unexpected results in the claimed thickness range of 50 to 100 Angstroms; and (2) that Geisler failed to show that the prior art of record, particularly the Zehender patent, taught away from the claimed invention. Both are findings of fact subject to the clearly erroneous standard of review. *See In re Mayne,* 104 F.3d 1339, 1343, 41 USPQ2d 1451, 1455 (Fed.Cir.1997) ("An examination for unexpected results is a factual, evidentiary inquiry, which this court reviews for clear error."); *In re Borden,* 90 F.3d 1570, 1576, 39 USPQ2d 1524, 1527 (Fed.Cir.1996) ("The question of what the prior art teaches is a question of fact subject to review for clear error."). We conclude that neither of those two underlying findings is clearly erroneous, and we therefore uphold the Board's decision on the ultimate legal issue of obviousness.

### A

At the outset, we are met by the argument by the Commissioner of Patents and Trademarks that the Board's factual findings should be reviewed under the "substantial evidence" test, not the "clearly erroneous" test that this court has traditionally applied to findings of the Board on factual questions relating to patentability. For the present, at least, we are bound by the "clearly erroneous" test, which has been repeatedly employed in this context and which remains the law of this court unless and until a different test is dictated by this court sitting in banc or by the Supreme Court. *See, e.g., In re Lueders,* 111 F.3d 1569, 1575, 42 USPQ2d 1481, 1487 (Fed.Cir.1997). We therefore examine both factual questions in this case under the "clearly erroneous" standard of review.

### B

Geisler concedes that the examiner was correct to find the claims prima facie obvious, because the claimed thickness range of 50 to 100 Angstroms for the protective layer overlaps at its end point with the thickness range of 100 to 600 Angstroms disclosed by Zehender. *See Haynes Int'l, Inc. v. Jessop Steel*

*Co.,* 8 F.3d 1573, 1577 n. 3, 28 USPQ2d 1652, 1655 n. 3 (Fed.Cir.1993) ("when the difference between the claimed invention and the prior art is the range or value of a particular variable, then a prima facie rejection is properly established when the difference in range or value is minor"); *In re Malagari,* 499 F.2d 1297, 1303, 182 USPQ 549, 553 (CCPA 1974) (claimed invention is rendered prima facie obvious by the teachings of a prior art reference that discloses a range that touches the range recited in the claim).

Addressing a case similar in some respects to this one, the Court of Customs and Patent Appeals stated that a prima facie case of obviousness can be rebutted if the applicant (1) can establish "the existence of unexpected properties in the range claimed" or (2) can show "that the art in any material respect taught away" from the claimed invention. *See In re Malagari,* 499 F.2d at 1303, 182 USPQ at 553. Both parties accept that test as the governing standard for assessing the evidence in this case, but of course each party urges that a proper application of the test leads to a different outcome.

### 1

■ With respect to the first element of the test, we agree with the Commissioner that Geisler has failed to satisfy his burden to show that the claimed protective layer exhibits unexpected properties in the 50 to 100 Angstrom thickness range.

■ As this court has explained, "[o]ne way for a patent applicant to rebut a prima facie case of obviousness is to make a showing of 'unexpected results,' *i.e.,* to show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected." *In re Soni,* 54 F.3d 746, 750, 34 USPQ2d 1684, 1687 (Fed.Cir.1995). When an applicant seeks to overcome a prima facie case of obviousness by showing improved performance in a range that is within or overlaps with a range disclosed in the prior art, the applicant must "show that the [claimed] range is *critical,* generally by showing that the claimed range achieves unexpected results relative to the

prior art range." *In re Woodruff*, 919 F.2d 1575, 1578, 16 USPQ2d 1934, 1936 (Fed.Cir. 1990).

■ Under that standard, "it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 42 C.C.P.A. 824, 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955). Only if the "results of optimizing a variable" are "unexpectedly good" can a patent be obtained for the claimed critical range. *In re Antonie*, 559 F.2d 618, 620, 195 USPQ 6, 8 (CCPA 1977); *see also In re Dillon*, 919 F.2d 688, 692, 16 USPQ2d 1897, 1901 (Fed.Cir.1990) (in banc). Furthermore, it is well settled that unexpected results must be established by factual evidence. "Mere argument or conclusory statements in the specification does not suffice." *In re De Blauwe*, 736 F.2d 699, 705, 222 USPQ 191, 196 (Fed.Cir.1994); *see also In re Soni*, 54 F.3d at 750, 34 USPQ2d at 1687.

Geisler points to no evidence in his application demonstrating that the wear resistance of the protective layer in the 50 to 100 Angstrom range is "unexpectedly good." In fact, his application does not even contain an assertion that the wear resistance of the coating is unexpectedly good over that range. Instead, the only evidence relating to his present claim of unexpected results is the report in his application of tests that showed that, over a range between 50 and 900 Angstroms, the protective layer demonstrated greater wear resistance at lesser thicknesses. But there is nothing in the application, or in any evidentiary submission made to the examiner, to support Geisler's claim that those test results were unexpected in light of the state of scientific knowledge at the time regarding coatings of that composition.

It is not enough for Geisler to suggest, as he does, that as a matter of "common sense" a thicker coating would be expected to wear better than a thin one. An assertion of what seems to follow from common experience is just attorney argument and not the kind of factual evidence that is required to rebut a prima facie case of obviousness. *See In re Wood*, 582 F.2d 638, 642, 199 USPQ 137, 140 (CCPA 1978); *In re Lindner*, 59 C.C.P.A. 920, 457 F.2d 506, 508, 173 USPQ 356, 358

(CCPA 1972) ("mere lawyers' arguments unsupported by factual evidence are insufficient to establish unexpected results").

It is also not enough for Geisler to argue that his test results are contrary to the assumptions underlying the critical passage in Zehender. The Zehender inventors may have assumed that a protective layer of less than about 100 Angstroms would not provide sufficient protection. Such an assumption is contrary to Geisler's evidence that a coating 50 Angstroms thick offers better wear resistance than a coating 100 Angstroms thick, at least as determined by the "brush tests" that Geisler conducted on the coatings. But the fact that one group of inventors 15 years earlier may have made an assumption that was contrary to Geisler's test results does not prove that Geisler's results would be regarded as unexpected by one of ordinary skill in the art at the time of Geisler's application. Geisler did not offer evidence of unexpected results in the form of a statement to that effect from the inventors or any third party, or any objective evidence from a respected source—the kind of evidence that we have previously required to rebut a prima facie case. *See In re De Blauwe*, 736 F.2d at 705, 222 USPQ at 196; *see also In re Burckel*, 592 F.2d 1175, 1180 & n. *, 201 USPQ 67, 71 & n. 1 (CCPA 1979).

This court's decision in *In re Soni*, 54 F.3d 746, 34 USPQ2d 1684 (Fed.Cir.1995), on which Geisler places heavy reliance, is readily distinguishable. The court in *Soni* found that the applicants had rebutted the prima facie case of obviousness by producing evidence of "substantially improved results" over the prior art range. *See* 54 F.3d at 751, 34 USPQ2d at 1688. Geisler's brush test report showed 26 percent greater wear resistance at a thickness of 50 Angstroms than at a thickness of 100 Angstroms. Standing alone and in the context of the claimed invention, that evidence does not constitute proof of "substantially improved results" comparable to the 50–fold improvement in tensile strength for the composition that was at issue in *Soni*.

Moreover, the applicants in *Soni* stated in their application that the improved properties exhibited by the claimed compositions

were "much greater than would have been predicted," 54 F.3d at 750, 34 USPQ2d at 1687, while Geisler made no such assertion in his application. Nor did Geisler submit any such statement through other evidentiary submissions, such as an affidavit or declaration under Rule 132 of the Rules of Practice in Patent Cases, 37 C.F.R. § 1.132. *See In re Orfeo*, 58 C.C.P.A. 1123, 440 F.2d 439, 441, 169 USPQ 487, 489 (CCPA 1971). Instead, the only reference to unexpected results was a statement by Geisler's counsel, in response to the examiner's first rejection, that Geisler's results were "surprising." And, as the *Soni* court itself noted, naked attorney argument is "insufficient to establish unexpected results." *In re Soni*, 54 F.3d at 750, 34 USPQ2d at 1687, *quoting In re Wood*, 582 F.2d at 642, 199 USPQ at 140.

The court in *Soni* summed up the rule of that case as follows: "[W]hen an applicant demonstrates *substantially* improved results, as Soni did here, and *states* that the results were *unexpected*, this should suffice to establish unexpected results *in the absence of* evidence to the contrary." 54 F.3d at 751, 34 USPQ2d at 1688. Geisler did not satisfy either of the *Soni* prerequisites. *Soni* is therefore of no help to Geisler.

### 2

■ The second element of the *Malagari* test asks whether the prior art teaches away from the claimed invention. The Board found that the prior art of record does not teach away from the claimed range of 50 to 100 Angstroms, and we uphold that finding.

The Wagner patent contains no teaching at all with regard to the desired thickness of the protective layer, and the Zehender patent refers to a thickness of 100 Angstroms as providing "suitable protection." To be sure, the Zehender reference states that the thickness of the protective layer "should not be less than about [100 Angstroms]," which suggests that Zehender assumed that the degree of protection afforded by the protective layer would be reduced, rather than increased, at thicknesses substantially below 100 Angstroms. Nonetheless, by stating that "suitable protection" is provided if the protective layer is "about" 100 Angstroms thick, Zehen-

der directly teaches the use of a thickness within Geisler's claimed range.

More than that, Zehender suggests that there are benefits to be derived from keeping the protective layer as thin as possible, consistent with achieving adequate protection. A thinner coating reduces light absorption and minimizes manufacturing time and expense. Thus, while Zehender expresses a preference for a somewhat thicker protective layer of 200 to 300 Angstroms, at the same time it provides the motivation for one of ordinary skill in the art to focus on thickness levels at the bottom of Zehender's "suitable" range—about 100 Angstroms—and to explore thickness levels below that range. The statement in Zehender that "[i]n general, the thickness of the protective layer should not be less than about [100 Angstroms]" falls far short of the kind of teaching that would discourage one of skill in the art from fabricating a protective layer of 100 Angstroms or less. Like the court in *Malagari*, we are therefore "not convinced that there was sufficient teaching away in the art to overcome [the] strong case of obviousness" made out by Zehender. *See Malagari*, 499 F.2d at 1303, 182 USPQ at 553.

### III

■ Because we conclude that the Board did not commit clear error with respect to the two factual issues on which Geisler based his effort to rebut the prima facie showing of obviousness, we uphold the Board's decision that the subject matter of claim 44 would have been obvious to a person of ordinary skill in the art. Geisler has not made a separate argument that the dependent claims are patentable regardless of the disposition of claim 44. In the absence of a separate argument with respect to the dependent claims, those claims stand or fall with the representative independent claim. *See In re Young*, 927 F.2d 588, 590, 18 USPQ2d 1089, 1091 (Fed.Cir.1991). We therefore affirm the Board's decision upholding the examiner's final rejection.

*AFFIRMED.*