NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UNITED SERVICES AUTOMOBILE ASSOCIATION,**
*Appellant*

**v.**

**PNC BANK N.A.,**
*Appellee*

---

2023-2244

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-00075.

---

Decided: March 5, 2025

---

ANTHONY ROWLES, Irell & Manella LLP, Newport Beach, CA, argued for appellant. Also represented by LISA GLASSER, STEPHEN PAYNE; JASON SHEASBY, Los Angeles, CA; WILLIAM M. JAY, ROHINIYURIE TASHIMA, Goodwin Procter LLP, Washington, DC.

ANDREW J. DANFORD, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellee. Also represented by MARK CHRISTOPHER FLEMING, MONICA

GREWAL, AMY L. MAHAN, ALEX NEMTZOW; DAVID LANGDON CAVANAUGH, GREGORY H. LANTIER, Washington, DC.

————————

Before DYK, PROST, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

United Services Automobile Association ("USAA") appeals from a final written decision issued by the Patent Trial and Appeal Board in an *inter partes* review of U.S. Patent No. 9,224,136. *PNC Bank N.A. v. United Servs. Auto. Ass'n*, No. IPR2022-00075, Paper 47 (P.T.A.B. June 9, 2023) ("*Decision*").[1] The Board found all claims of the '136 patent unpatentable under 35 U.S.C. § 103. *Id.* at 66–67. For the reasons discussed below, we *affirm* the Board's decision.

## I. BACKGROUND

USAA owns the '136 patent, which is titled "Systems and Methods for Remote Deposit of Checks." The patent was filed on March 20, 2014, and claims a priority date of October 31, 2006. The patent is generally directed to remote check deposit technology. '136 patent col. 2 ll. 40–43. The patent describes systems for facilitating check deposit, involving a financial institution server receiving one or more images of a check and processing the transaction using the images and other information acquired. *Id.* col. 2 l. 40 to col. 3 l. 10. Claims 1 and 14 are illustrative and recite:

————————

[1] Citations in this opinion are to the version of the Board's decision in the Joint Appendix. *See* J.A. 1–69.

UNITED SERVICES AUTOMOBILE ASSOCIATION v. PNC BANK N.A.    3

1. A system comprising:

a processor; and

a memory storing processor-executable instructions that, when executed by the processor, cause the processor to:

receive an account identification number, check amount indication, and check image, where the check image is an image of a check captured by a camera;

perform optical character recognition on the check image to determine a routing number for the check image;

validate the routing number for the check image; and

initiate a check deposit for the check image.

14. A system for processing a check deposit, comprising:

a plurality of processors, each having a memory associated therewith, configured to execute instructions to:

receive a customer identification of an account for a deposit;

receive an image of a front side of a check captured by a camera, wherein the image of the front side of the check is received from a remote device;

receive an image of a back side of the check captured by the camera, from the remote device;

> process the image of the front side of the check to obtain deposit information for the check;
>
> process the image of the back side of the check to determine whether a mark is present on the image of the back side of the check by:
>
> determining whether a mark is present at an endorsement location in the image of the back side of the check without further performing a signature identification procedure; and
>
> generate a log file, the log file comprising at least a portion of the deposit information for the check.

*Id.* col. 14 ll. 9–20, col. 15 l. 5 to col. 16 l. 2.

On November 5, 2021, PNC Bank N.A. ("PNC") filed the IPR underlying this appeal, challenging all eighteen claims of the '136 patent. J.A. 73; J.A. 104–83. PNC alleged each of the '136 patent claims was obvious over one of seven combinations of prior art references, asserting that: (1) claims 1–3 and 7–9 were obvious over the combination of Garcia,[2] Acharya,[3] and Richardson;[4]

---

[2] International Patent Application Publication No. WO 2005/043857, (filed Oct. 30, 2003; published May 12, 2005) J.A. 1092–137 ("Garcia").

[3] International Patent Application Publication No. WO 01/61436 (filed Feb. 16, 2001; published Aug. 23, 2001), J.A. 1138–52 ("Acharya").

[4] U.S. Patent Application Publication No. 2005/0281450 (filed June 20, 2005; published Dec. 22, 2005), J.A. 1153–82 ("Richardson").

(2) claims 5, 11, and 13 were obvious over the combination of Garcia, Acharya, Richardson, and Randle;[5] (3) claims 6 and 12 were obvious over the combination of Garcia, Acharya, Richardson, and Slater;[6] (4) claims 4 and 10 were obvious over the combination of Garcia, Acharya, Richardson, and Pintsov;[7] (5) claims 14–16 were obvious over the combination of Garcia, Acharya, Richardson, Randle, and Davis;[8] (6) claim 17 was obvious over the combination of Garcia, Acharya, Richardson, Randle, Davis, and Pintsov; and (7) claim 18 was obvious over the combination of Garcia, Acharya, Richardson, Randle, Davis, and Slater. *Decision* at 6; J.A. 112–15.

On June 9, 2023, the Board issued a final written decision concluding that PNC had shown by a preponderance of the evidence that all claims of the '136 patent were unpatentable as obvious. *Decision* at 66–67.

USAA timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

"We review the Board's legal conclusions de novo and its fact findings for substantial evidence." *Game & Tech.*

---

[5] U.S. Patent Application Publication No. 2006/0106717 (filed May 15, 2004; published May 18, 2006), J.A. 1214–38 ("Randle").

[6] European Patent Application Publication No. 0984410 (filed July 7, 1999; published Mar. 8, 2000), *PNC*, No. IPR2022-00075, Ex. 1006 ("Slater").

[7] U.S. Patent Application Publication No. 2007/0118747 (filed Nov. 18, 2005; published May 24, 2007), *PNC*, No. IPR2022-00075, Ex. 1007 ("Pintsov").

[8] U.S. Patent Application Publication No. 2005/0216410 (filed Mar. 26, 2004; published Sept. 29, 2005), J.A. 1239–55 ("Davis").

*Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1348 (Fed. Cir. 2019). "Whether a claimed invention is unpatentable as obvious is a question of law that is reviewed de novo, based on underlying findings of fact reviewed for substantial evidence." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *FanDuel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1343 (Fed. Cir. 2020) (internal quotation marks and citation omitted). "The substantial evidence standard . . . involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1381 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

USAA raises two issues on appeal. First, USAA argues that substantial evidence does not support the Board's finding that Randle discloses a negative limitation present in claims 14–18. Appellant's Br. 21–30. Second, USAA argues that the Board's determination that a person of ordinary skill in the art would have been motivated to combine Garcia with Richardson is not supported by substantial evidence. *Id.* 30–39. We find both arguments unpersuasive.

A.

USAA argues that the Board erred in finding that Randle discloses the negative limitation in claims 14–18 based on its misinterpretation of Randle's disclosure. *Id.* 21–30. We disagree.

Claim 14 requires "determining whether a mark is present at an endorsement location in the image of the back side of the check without further performing a signature identification procedure." '136 patent col. 15 ll. 19–22. Claims 15–18 depend from claim 14 and incor-

porate this limitation. *Id.* col. 16 ll. 3–21. The Board construed this claim limitation to mean "the presence of the mark is determined by any suitable means without further performing a procedure (1) to determine the presence of a signature on the check or (2) to determine that a signature on a check matches a particular known signature." *Decision* at 12. Neither party contests the Board's construction. *See* Appellant's Br. 21; Appellee's Br. 29.

The Board determined that Randle teaches the limitation at issue. *Decision* at 59–62. Randle "relates generally to end to end electronic transaction processing." J.A. 1227 ¶ 2. As part of this process, Randle discloses a quality assurance procedure which includes a step for checking whether an endorsement is present. J.A. 1224, Fig. 9B (disclosing the step of "[e]ndorsement [i]s it there" at box 124); *see also* J.A. 1231 ¶ 42; J.A. 1235 ¶ 74. The Board noted that "Randle makes no mention of determining whether the endorsement is a signature or looks like a signature" and that "although Randle discloses verifying the signature on the front of the check, Randle discloses checking only for the presence of the endorsement on the back of the check." *Decision* at 61; *see* J.A. 1224, Fig. 9B (disclosing the step of "[s]ignature [c]heck [i]s it [t]here" at box 122 and "[s]ignature [v]alidation [c]ompare to that on file" at box 123); J.A. 1235 ¶ 74. The Board also credited the testimony of Dr. Brian Noble, PNC's expert, that a skilled artisan would understand that Randle's endorsement checking process did not involve performing signature identification on the endorsement location. *See Decision* at 61 (citing *PNC*, No. IPR2022-00075, Ex. 1025 at 33–34 ¶ 46 (P.T.A.B. Jan. 17, 2023)); *see also* J.A. 1063–67 ¶¶ 199–203; J.A. 1846–47 ¶¶ 42–43.

USAA argues that the Board relied on Randle's "silence" with respect to its endorsement checking procedure to find that Randle taught looking for a mark without

further performing a signature identification procedure. Appellant's Br. 24–25.  Here too, we disagree.

"Silence is generally not disclosure." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022), *cert. denied sub nom. Novartis Pharms. Corp. v. HEC Pharm Co.*, 143 S. Ct. 1748 (2023). However, "a reference need not state a feature's absence in order to disclose a negative limitation." *AC Techs. S.A. v. Amazon.com, Inc.*, 912 F.3d 1358, 1367 (Fed. Cir. 2019). In determining what a prior art reference discloses, we look to what a skilled artisan would understand from reading the reference, which includes the internal context within the reference.  *See Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 273 (Fed. Cir. 2022) ("[I]t was reasonable for the Board to find that, in the context of [a prior art reference], a skilled artisan would recognize that the reference discloses a complete formulation—excluding the possibility of an additional active ingredient.").

Here, the Board relied on such context, as well as Dr. Noble's testimony on how a skilled artisan would interpret Randle in light of that context.  As the Board explained, "Randle explicitly distinguishes determining the presence of the check writer's signature on the front of the check and verifying that signature from merely checking for the presence of the payee's endorsement on the back of the check." *Decision* at 61–62.  Contrary to USAA's assertion, the Board's conclusion is not founded solely on Randle's silence.

Because a check endorsement is usually a signature, USAA also argues that Randle's process of checking for an endorsement is the same as, or at least necessarily includes, checking for the presence of a signature.  *See* Appellant's Br. 22–24.  USAA acknowledges that the category of endorsements is broader than signatures.  *See id.* at 22 (recognizing that "in certain instances (such as business checks) a stamp may be used in place of a hand-

written signature"). As the Board explains, checking for the presence of an endorsement does not necessitate checking for the presence of one of its subcategories. *See Decision* at 61–62. Accordingly, we agree with the Board that USAA's position improperly conflates the terms endorsement and signature.

For the above reasons, we conclude that substantial evidence supports the Board's conclusion that Randle teaches the negative limitation present in claims 14–18.

## B.

USAA challenges the Board's determination that a skilled artisan would have been motivated to combine Garcia and Richardson on two separate bases. First, USAA argues that the Board failed to consider USAA's proffered prior art reference of Dance[9] and the associated arguments. Appellant's Br. 31–35. Second, USAA contends that the Board incorrectly interpreted Garcia to disclose using optical character recognition ("OCR") to extract data from check images. Appellant's Br. 35–39. We disagree with both of USAA's arguments.

USAA contends that the Board failed to consider its argument that Dance "taught away from combining a system that captures images of documents using a mobile camera . . . with a technique employing optical character recognition to process the captured images and extract data." Appellant's Br. 31; *see id.* at 32–35. While the Board's decision does not explicitly mention Dance, it addresses USAA's argument based on *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. IPR2020-01650 (P.T.A.B.

---

[9]    U.S. Patent No. 6,922,487 (filed Nov. 2, 2001; issued July 26, 2005), J.A. 4106–23 ("Dance").

filed Sept. 18, 2020).[10]  *Decision* at 40–41.  Because we conclude that USAA's Dance argument is the same as its *Mitek* argument, we hold that the Board did consider and address USAA's Dance argument.

In the Patent Owner Response, USAA stated that the Board in *Mitek* "recognized that the prior art taught a [person of ordinary skill in the art] about 'the difficulties with using a digital camera instead of a traditional scanner to capture check images to perform the OCR process' (citing EX2033, Dance)."  J.A. 596–97 (quoting *Mitek*, IPR2020-01650, Paper 21, at 26).  After acknowledging differences between the prior art asserted in *Mitek* and in the underlying IPR, USAA argued that concerns regarding the "quality of the image" were nevertheless relevant as they "directly impact[ed] whether a [person of ordinary skill in the art] would have been motivated to use OCR-based check processing techniques . . . with images captured by a mobile device."  J.A. 597 (emphasis omitted).  In support of this assertion, USAA raised the same argument based on the same section of Dance that it now identifies on appeal.  *Compare* J.A. 597–98 (citing J.A. 4118 at col. 1 ll. 14–53) *with* Appellant's Br. 31–32 (citing J.A. 4118 at col. 1 ll. 32–53).  USAA's Patent Owner's Response demonstrates that the arguments based on *Mitek* and Dance are one and the same in the context of the Board's final written decision.  The Board adequately addressed the *Mitek* argument, and USAA does not con-

---

[10]    In 2020, Mitek Systems, Inc. filed an IPR on a related patent, U.S. Patent No. 10,013,681.  *Mitek*, No. IPR2020-01650, Paper 1 (P.T.A.B. Sept. 18, 2020).  Dance was among the prior art references asserted in the *Mitek* petition.  *Id.* at 9.  The Board denied institution of the *Mitek* IPR.  *Mitek*, No. IPR2020-01650, Paper 21, at 39 (P.T.A.B. Mar. 9, 2021).

tend otherwise. *See Decision* at 40–41; *see, e.g., Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) ("[F]ailure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it."). We conclude that the Board did consider USAA's Dance argument.

USAA next challenges the Board's finding of a motivation to combine on the basis that it relies on an incorrect interpretation of Garcia. Appellant's Br. 35–39. The Board interpreted Garcia as disclosing "a system that employs a camera on a mobile device and uses OCR of the [check] image." *Decision* at 28; *see* J.A. 1131 at col. 11 ll. 7–15. The Board found that Richardson teaches "techniques to validate or verify the information obtained from OCR of the check image including the bank routing number." *Decision* at 33; *see* J.A. 1167 ¶¶ 39–42. Noting that "Garcia does not expressly disclose details about how a check image is recognized, verified and processed," the Board agreed with PNC that a skilled artisan "would have had reason to seek out implementation details, such as those disclosed by Richardson, concerning the recognition, verification, and processing of information." *Decision* at 22; *see also id.* at 33–36. Therefore, the Board found that a skilled artisan would have been motivated to combine Garcia and Richardson. *Id.* at 36.

USAA argues that the Board's conclusion that Garcia discloses a system where "the content of the check images are machine read, not input by the customer" is unsupported by the evidence in the record. Appellant's Br. 35–36 (quoting *Decision* at 25, 29); *see id.* 35–39. We disagree.

In reaching its determination, the Board relied on Garcia's description of its "[p]referred embodiment of the [i]nvention," which includes steps for "[c]apturing the digital image of the obverse and the reverse side of the document," "[c]apturing the data associated with the

document, such as the amount and the check number," and "[t]ransmitting the digital image and the recognition data, once encrypted, to the institution that must accept the document." J.A. 1129–30 at col. 9 l. 9 to col. 10 l. 18; *see Decision* at 28–29. The Board also cited the testimony of Dr. Charles Creusere, USAA's expert, which it understood as "acknowledg[ing] that Garcia's preferred embodiment expressly teaches that the content of the check images [is] machine read with OCR, not input by the customer." *Decision* at 29–30; *see* J.A. 1934–36 at 155:24–157:21; J.A. 1936 at 157:15–21 (Q: Okay. And the institution when it receives that information sent by the user applies optical character recognition to it, correct? . . . The Witness: It does say it applies optical character recognition to -- to the information that is sent to it."). At a minimum, the Board presents reasonable interpretations of Garcia and Dr. Creusere's testimony. *See Velander v. Garner*, 348 F.3d 1359, 1378 (Fed. Cir. 2003) ("[I]t is not for us to second-guess the Board's assessment of the evidence."). We conclude that the Board's finding that Garcia uses OCR on check images captured by a mobile camera is supported by substantial evidence.

For the reasons stated, we conclude that substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine Garcia and Richardson.

## III. Conclusion

We have considered USAA's remaining arguments and find them unpersuasive. We affirm the Board's final written decision finding all eighteen claims of the '136 patent unpatentable for obviousness.

**AFFIRMED**